Again, good morning, Your Honors, and may it please the Court. Paul Clark for the appellants, Sergeant Malhin and Paul Argen. And again, we'll be observing three minutes. Your Honors, this is a case about a content-based prior restraint entered as what we call a gag order on a matter of public concern. Mr. Clark, could I preliminarily ask you something that, while preliminary, it is unusual in my To see challenged as detailed and vigorously as it was here, the related cases and proceedings section of the respective briefs. Yours, in the blue brief, indicates none directly related. The red brief, on the other hand, spends, I think, more than three pages taking issue with that. I raise it not to quibble so much, but because the litigation that is before us and litigation that has preceded this oral argument today figures very profoundly in the oral argument that I anticipate and in how we'll analyze things here. Could you perhaps explain why we have I guess I would add to Judge Smith's question just a simple addition of how many bites of the apple do you think you're entitled to in front of the district court and this court? One, Your Honor. We'd like one bite of the apple in front of any court. Okay, you were here in 2020. You were here in your 2020 complaint, and then perhaps you want to proceed and answer me. Well, right, so let me come back to that. The short answer is the 2020 complaint did not adjudicate the 2015 gag order. Those were 2020 gag orders. But let me go back to the history, Your Honor. So first of all, in terms of the brief, I believe what it says is pending cases, and those are not pending. Those are older cases. Well, no, so what I recited was your answer is none directly related. Right. But in any event, Your Honor, the history of the case, so this was first adjudicated, and it was not Mr. Mallon. It was another reporter, Paul Nichols, who filed a case. The case is called Nichols v. Civilli, and this goes back to the 2014 gag order. So Judge Nancy Civilli in 2014 issued the first gag order against Mr. Mallon. I think we all know the lengthy history here. My question simply was why was there such a disparity between your approach to reciting very briefly related cases and that of the other side, and the other side may in its turn want to Well, again, a number of points on that, Your Honor. So first of all, that case does not apply to Mr. Arjun. Mr. Arjun was not a party in that case, so clearly it does not apply to Arjun. Grant you that. Okay, so either way, Arjun wins on that point regardless of anything else. Secondly, as I was saying earlier, the 2020 Katz case did not involve the 2015 gag order, just as the Nichols case involved the 2014 gag order. And then, in fact, there's another case that we tried to talk about, Edelglass. It was in the district court. It was called Edelglass v. Mallon v. some judges. It was on appeal. It was called the DiBello case, and in that case, the district court ruled on this specific issue in terms of the 2014 gag order. Well, not exactly, Your Honor. The 2015 gag order partially vacated the 2014 gag order, and then issued a new gag order claiming to protect Department of Child Protection and Permanency records. That was why the 2015 gag order was entered. Then there were entirely new gag orders entered into it. Are you arguing to us that all of the gag orders that have been previously entered remain in effect? That there was no supercession? The 2014 gag order, which this court ruled in Allen v. DiBello, was not covered by the younger abstention. And that's precedent. That's binding on this court. That gag order, 2014, was partially vacated, again, by the younger abstention. You could call it fully vacated, but he said he was partially vacating it. So that gag order was partially vacated. And again, it was contested in the district court. The district court said that younger did not apply to that case. It was dismissed on other grounds. And then this court upheld, again, the DiBello case on the same grounds. So that is binding precedent. And that says the 2014 gag order. All right. Which gag order are you challenging in the 2018 complaint? The 2018 complaint was the 2014. I'm sorry. If it's this case, you're talking about this case. The 2015, yes, because this case goes to 2018. Which gag order did you challenge in the 2020 complaint? We challenged the 2020 gag orders. There were a series of gag orders in 2020 that the court issued, which were completely new, really had nothing to do with the 2015 gag order, which was, again, supposedly about protecting DCPP information. There were gag orders there that said that Mr. Mallon could not have any contact or communication with any employee of any private school, private high school, anywhere in New Jersey. That was the most ridiculous gag order. It extends to this day. He's not allowed to talk to any employee of any public school, private school, anywhere in New Jersey. Supposedly because they wanted to stop him from contacting the children's school, Del Barton, where there was a horrible sex scandal a few years ago. But it was absurdly broad. We challenged that gag order. I'm not here to relitigate that. But that's what was being – and there were some other gag orders as well. But it was not the 2015 gag order. The 2015 gag order is at issue in this case, Your Honor. And frankly, we couldn't try to have two cases at the same time on the same gag order. You can't do that. In fact, if we had tried to do that, then you would say, well, sure, go back to litigate it in your other case, because then you're doing the 2015 gag order. That's the order, the 2015 gag order, the DCPP order, is what's at issue in this case. It was not discussed, the 2015 gag order, was not discussed by the district court when it dismissed, or certainly not discussed by this court when it summarily affirmed in two lines. And in fact, the 2020 case, I think it was five paragraphs, again, didn't discuss the 2015 gag order in any way, shape, or form. Now, our complaint referenced both the 2014 and the 2015 gag orders. Again, the 2014 order that this court found was not covered by younger abstention. In that case, the district court issued this very short decision, and again, in our complaint, we referenced the 2014 and the 2015 cases simply as background. We weren't trying to relitigate the 2014 case. We certainly weren't trying to litigate the 2015 gag order, which is here in this case. In fact, frankly, I mean, obviously, we had a new case because there was new gag orders, and frankly, we anticipated that we would probably have those consolidated at some point. But they didn't consolidate, they dismissed the new gag orders. But the 2015 gag order, the DCPP gag order, is what's at issue in this case, Your Honor, was not addressed in the 2020 district court, or in the appeal. Mr. Clark, let me ask you about the merits. We have an NPO in the Silver case that I'm sure you're familiar with. There we held that a gag order in a custody hearing is uniquely in furtherance of a state judicial function. Do you agree with the proposition that if we, this panel, on behalf of the Third Circuit, follows what was written in Silver, then we would have to abstain, in your case, on younger grounds? No, Your Honor. Obviously, I disagree. But first, let me say, not only is it an unpublished opinion, it's contrary to this court's... That's not what I asked. Let me try my question. Well, I understand your question, Your Honor. But I don't want to miss my opportunity. Could you answer it, then? Yes, I will. And if I could come back to the other point, if I have time. So, Silver obviously doesn't apply to Paul Argent. Paul Argent is a media person. He was in no way, shape, or form a party. So it can't possibly apply to Argent. Correct. What about Malhan? Okay. So, for Malhan, again, there's a number of ways it's easily distinguishable. So, first of all, the Silver case involved sexual abuse of a minor. We all know that the courts are very, very touchy when it comes to sexual abuse of a minor. That's not an issue in this case. So I don't doubt that the courts bent over backwards in Silver and violated Altman v. O'Brien. So your argument is a gag order in a child custody case that involves sexual abuse is in furtherance of a state judicial function, but a gag order in a child custody case where the judge is trying to protect minor children is not uniquely in furtherance of a state judicial function? Is that your argument? No, because I don't think that the gag order in Silver was in furtherance. Well, that's why I asked my question. So let me start again. Okay. It sounds, then, based on what you just said, Silver was wrongly decided. What you want to argue is it's not precedential, it was wrongly decided, and we shouldn't follow it. Is that your argument? And it's contrary to President Allen v. DiBello, 861 F. 3rd 433. It's explicitly contrary to this Court's binding precedent. All right. But if I could follow, because I have three other points on how to distinguish the case. If you want to follow that and distinguish the case and ignore Allen, I don't think you can do that. But the gag order in this case was allegedly made pursuant to a statute, DCPP regulation that says that DCPP records are confidential. So in this case, we have a statute. And again, that's why we had to bring the Attorney General in. Because the judge says, oh, it's a statute, go sue the Attorney General. The Attorney General says, oh, the judge did it, go talk to the judge. But you can't sue the judge anyway. Although we think we can certainly get declaratory judgment. So this is a statute. Statute doesn't require a gag order, does it? It's up to the judge to issue the gag order. And indeed, your argument is the judge should not have issued this gag order, right? Well, the judge said that he had pursuant to the statute an obligation to issue the gag order. But the judge might have been wrong about that. Well, I agree, but then I'd like to bite that apple. Right. So that gets us back to this federal-state interaction, which is poignant with respect to so many of these cases involving your clients. Namely, if that state judge erred, then you take it up. And in fact, the case is on appeal. You've got this 300-plus page opinion. And as I understand it, that case is currently on appeal in the New Jersey state system, is it not? That's correct, John. Now, I see I'm out of time. If I could... You can answer the question. So if that case is on appeal, as you well know, the federal courts are here to provide disappointed state litigants with a do-over. That's sort of a rudimentary way of explaining the way the system works. Wouldn't you agree with that principle? I think that's not a do-over. I generally agree, but it's not a do-over because the gag order has never been adjudicated by any court on the merits. Correct. And that's why we have to deal with the question of whether younger abstention applies. And that really comes down to answering whether it's uniquely in furtherance of a state judicial function, right? And again, Your Honor, I don't think it is. But if I could also, again, make my final two points, distinguishing... Yeah, why don't you just, if you could just focus on that and tell us, tell us your best arguments or all your arguments why the gag order issue here is not uniquely in furtherance of a state judicial function. Well, because first, the judge claimed it was simply enforcing a statute. So if you're enforcing a statute, there's nothing unique to judicial function about enforcing a statute. So that's the first problem that I think that they have. Secondly, certainly not all gag orders are uniquely in furtherance of a statute. Again, the precedent is clear. Allen v. DiBello is clear about this. And courts, state courts are sued all the time for gag orders, and federal courts hear the gag orders. Gag orders, in fact, are very, in some ways, unique. Well, now wait a minute. Is the uniqueness something that is inherent in gag orders generally? Or is the uniqueness to be found in the factual makeup, the factual background that goes to the judge's decision as to why a gag order is called for in a family law, or in this case, custody matter? Well, Your Honor, certainly there could be very unusual facts that I suppose could make something factually unique. Well, this is an unusual case. I say that as an old state court judge who used to hear and decide custody cases. Toughest cases you can come across. Really, really difficult. Best interest of the child test. Pretty general test. But, Your Honor, that's not what was applied here for the 2015 gag order. It was not applied in the best interest of a child. That's your position, sir. Your Honor, the... I'm sorry. An adjudication as to who gets custody, or how it's split, or how much, is what the best interest standard is applied to. Your Honor, we have provided the transcript of Judge Kessler's imposing the gag order in 2015. He did not say at that hearing in June of 2015, we have the transcript. He said he was imposing the gag order to protect DCPP information because he thought that the litigants would not be able to do that. They would not be able to distinguish information they received from DCPP from general information. That's why Judge Kessler issued the gag order. It's not about the best interest of the children. Now, six months later, and again, whether that's even relevant, I wouldn't think it is, because frankly, this Court should look at the transcript of what happened in June of 2015. But six months later in December, Judge Kessler again said that's why he issued the gag order. And then he said, he cited the wrong statute, but he said the statute was to protect children from embarrassment. And talked about something in there vaguely the best interest of the children. But again, that wasn't discussed when the gag order was entered. The gag order was entered allegedly to protect DCPP confidential information. And that's what the gag order in 2015 was about. You can conflate it with all kinds of other gag orders. But that's what this was about. And there was no plenary, and again, get back to try and fully answer Your Honor's question about the facts. There's never been a factual hearing. There's never been a plenary hearing. It didn't even happen at trial. At trial, the other side presented no evidence on the gag order. And again, I provided the transcript, and we provided volume three. And when I brought this up at the end of trial, and I said to the State Court, Judge, well, Your Honor, where's the gag order information? He said, that's not part of this case. He said, it's not part of this case. You'll have to file a motion. We filed a motion. He said, the motion is not proper. The motion was brought up without notice in the middle of trial. And again, they provided a copy of the judgment in which the State Trial Court judge talks about the motion not being proper. He still doesn't get to the merits of the case. So there's never been any factual discussion. There could be some very specific factual things that might make something extraordinary. But to do that, Your Honor, I would suggest, and I suggest this is what federal law requires, but in fact, Judge Martini of the District Court told Judge Civilli, and all the judges who follow her should follow that, there has to be a plenary hearing. And they have to get into specific facts to justify before issuing a gag order. That's never happened. It didn't happen in 2015. It hasn't happened since. It didn't happen at the trial. So I hope that answers Your Honor's question. All right, Mr. Clark, we'll hear you on rebuttal. Thank you. Mr. McGuire. Thank you, Your Honor. May it please the Court, Deputy Attorney General Robert McGuire from the Office of the New Jersey Attorney General, for the appellants, Superior Court Judge David Katz and the New Jersey Attorney General. At the outset, Your Honors, I just want to correct a couple things about what transpired previously that were addressed by counsel here. There was an adjudication with respect to the specific gag order at issue here. It is the matter that was before this Court under docket number 20-3177. It was the district court decision under the docket 20-8955. It's referenced in our brief. The Court can access the opinion, but footnote three of that opinion in the district court says that plaintiff specifically seeks relief from orders prohibiting him from discussing his divorce or child custody proceedings in the media or online. So clearly, this was part of the decision made in 2020 by the district court that was affirmed, in a summary affirmance, but nonetheless affirmed by this Court. With respect to the Allen v. DiBello case, there was no adjudication with respect to the Younger issue there. It was an adverse decision in the district court, but the appeal was taken by the plaintiffs in that case on issues other than Younger. This Court never weighed in on Younger. It's never weighed in on his orders, gag orders with respect to child custody issues, and quite cogently has determined that this is specifically the type of case. You want us to just follow Silver, even though it's not precedential? You think Silver's well-reasoned and we should adopt its reasoning? Or do you have more to add to that? Absolutely, Your Honor. It is well-reasoned, and even more so in this case because you have not just a gag order from 2015, but you actually have five, three, four, five gag orders in this case. And there have been attempts thereafter in the state court to try and overturn that gag order, where the courts have continuously said, we have reexamined your arguments and have determined that they will not vacate the gag order. Could I just turn to Arjun for a minute? I'm not sure I can appreciate how the district court could have been right with respect to Arjun, since he wasn't a party. Isn't the law pretty clear that since he's not a party, he can't be barred by Younger? Or Younger abstention doesn't apply to him, at least? I think the district court specifically found that Younger abstention was required with respect to Mr. Malhan. I think the court's decision as to the reporter Arjun was a logical consequence of that. And by that I mean the court determined that there is a state court decision on an issue of the agency, and of the utmost importance, the protection of the best interest of the child, that this court, in the interest of comedy, has said we're not going to step in and change that order. What does focus say for purposes of your argument on that point? Well, focus is interesting, Your Honor, and I admit it requires some... Well, interesting, yeah, that's why I ask about it. I'm more focused, if you will, on just what it means for purposes of the point you just made. Certainly, Your Honor. Focus, at first blush, presents some thoughts for consideration, but ultimately the question in focus was at the outset of a case, whether claims by a reporter as a reporting agency could be barred from even being presented to the federal court. And in deciding focus, what the court actually looked at were two issues. One, whether Rooker-Feldman applied, and this court determined that because there actually was no final adjudication on the merits with respect to the claims by the plaintiffs in that case, Rooker-Feldman didn't apply. And then with respect to the reporter in that case, the court held that younger abstention didn't apply because there was not a state proceeding that was currently underway that involved either the agency or the reporters. Those were the two issues that were discussed in focus. The question here is somewhat different, but it's an important difference, because we have now gotten to the end of the federal court process with respect to the person who could communicate to the reporter. And this court has found, or this court I hope will find, if it follows the decision as to gag orders in Silver, that that interest is important enough that this court is not going to step in and say to a state court judge who has weighed all of these things, and in this case in a trial that's lasted 11 years, and said, this interest is so important, we're going to leave you alone, state court. And the state court, the status of the matter there is the state court has said, and I think Judge Bottinelli's final decision really seals it, is that what's at stake here is lifelong scars for these children. If what has happened in the course of this lawsuit would be divulged to the public, particularly because now the children are a little bit older, they can get on the Internet, their friends can get on the Internet, and although it's not a traditional application of Younger, I think what the district court actually said was, essentially, Mr. Arjun's rights to get access to this information aren't really barred by Younger, but they're mooted. Well, but why isn't that an issue for remand? I mean, why don't we just send Arjun back and say, look, he's not a party, wasn't a party, our case law requires that he be a party if he's going to be subject to Younger abstention. There may be other reasons. He may have a standing issue. I mean, is he really just trying to carry Mildhand's water? There could be myriad reasons why Arjun loses, but why would we address those now, rather than just remanding the Arjun part of this case? I understand that, and, Your Honors, obviously that is one of the options. The instance here is, I think the defense position would be that the judge actually, although she couched it in terms of Younger, really determined this as a mootness argument, which is really, if the circumstance is that the person who wants to communicate is barred as a matter of law from communicating it, you can't have a viable claim. It's a factual matter. So that is the first instance. The other reason is that this Court can infirm, with respect to Mr. Arjun, on other grounds, and most prominently for the fact of the matter that this was an adjudicatory decision made by the trial court. Twice before when... Well, it's not judicial immunity. It's simply that you can't present a case against a sitting judge for their adjudicatory actions. So it's not strict judicial immunity, but it is the concept that this Court... I thought that was the definition of judicial immunity. Judges can't be sued for their judicial acts. And in this instance, the manner in which the judge is being sued by Mr. Arjun still deals with decisions made in an adjudicatory capacity. I wish there was a different word for that. But, first of all, the state court case was not initiated by Judge Kessler or Judge Katz. The request for a gag order was not initiated by Judge Kessler or by Judge Katz. The decision that he made, Judge Kessler at the beginning, Judge Katz thereafter, was as a judge. And the decision that was made was based on what this Court in the rest of the case, the Reynolds case, described as the quintessential case where it's adjudicatory capacity. It is making a decision based on an analysis of facts and law, and then applying that. So that is an alternative basis that this Court can affirm the dismissal of the claims by Mr. Arjun even without remanding to the district court. All right, but who should someone sue if they're subject to an unconstitutional gag order? Is it your argument that if a state court issues a gag order that is, I want you to assume, blatantly unconstitutional, where's the remedy? Who should they sue? How do they get relief from that? One option is to file a federal lawsuit in the state proceedings, although this Court observed in focus that's not required. The other option is to file a federal lawsuit, which Mr. Arjun had the right to file and to pursue. The issue here is this is different than... I think what Judge Hardiman asked is who do they sue in that federal lawsuit? Right. Well, in that federal lawsuit, it would have to probably be the judge because you couldn't sue the superior court. It's a statutory function that's immune, so therefore it's a suit clearly without any teeth or possibility of success. Right, because this Court has held that when judges act in an adjudicatory capacity, the judges personally cannot be sued. I mean, I thought your answer was, and maybe I gleaned this from the briefs, but I thought your answer was going to be if there's an unconstitutional gag order entered, the way to handle that is you take that judge up on appeal, right? Certainly. And then the Intermediate Appellate Court of New Jersey fixes the problem and says to the trial judge, you can't do that. And if the Intermediate Appellate Court doesn't solve it, then you go to the State Supreme Court, and they say, trial judge shouldn't have done that. And if the New Jersey Supreme Court doesn't give relief, then you go to the U.S. Supreme Court, and the U.S. Supreme Court can say that trial judge has to be sued. But if the judge has entered a gag order that violates the First Amendment, it can't stand. Right, there is a possibility of relief by pursuing in that manner. In fact, in this case, there was a constitutional argument made to the State Court that was addressed by the, in its incredibly long opinion, right? Your Honor, it was addressed from the moment that Judge Kessler first talked about this gag order throughout, but including in-depth and specifically in the final decision that was made. And the final decision was rendered, saying that the constitutional arguments were considered, the judge did the appropriate balancing, and said, the interest here are the interest in publishing this information, and the possibility of lifelong scars for two children who have been in the middle of a very, very difficult custody battle over the course of a decade. If Younger worked on the books, wouldn't it be the case that every time a State Court entered any sort of order that allegedly restricted the constitutional argument? If Younger had any constitutional rights, not just free speech rights, but any constitutional rights of a State Court litigant, then that State Court litigant could immediately go into federal court and press a federal constitutional claim. That is the concern, Your Honor, and that's specifically what Younger exists to prevent against. We don't want, I don't think, the federal courts don't want to be sitting as appellate courts when you have dissatisfied State Court litigants, particularly in this type of litigation. But yet, it's a narrow doctrine. Judicy v. Vail and Pennzoil, these are really tightly circumscribed factual scenarios, are they not? They certainly are. The duty has been for the court to exercise jurisdiction has been described as unflagging, unflaggable. In this instance, the court can throw the flag, because this is, in fact... How do we make sure that it doesn't creep into, how, persuade us that this gag order is in furtherance of, is uniquely in furtherance of State judicial conduct? Certainly, Your Honor, it's for the same two reasons this court identified in Silver, which is it involves two things that are unique to the State Court's functions. One, control of the behavior of attorneys and litigants before the court. Texaco was about money, the supersedious, after Joe Gimeno obtained a huge verdict in a Texas court, right? I've forgotten judice, I only know how to pronounce the Italian word, since it means judge. But big difference, isn't there, between talking about money and talking about the interests that you're concerned with? Right, the interests here are, and the interests here are even more significant, because not only is this a specialized court, but it's a specialized sort of order from a specialized sort of court with exclusive jurisdiction over these issues that is subject to a specialized standard in making the determination. So, in this instance, it involves both control of the attorneys and litigants, which obviously is something where this court probably doesn't want to step in and tell the State Courts how you should control the people who are before them, and what happens when somebody disobeys a State Court order. If you don't do that, you get what happened in this case, which is you have nine appeals when you're dissatisfied with the State Court. And the second issue is, you do have, if there is an order that is in furtherance of a unique function, it's hard to imagine a more unique order than a gag order in a specialized court protecting an interest that has been identified as among the highest standards that we want to protect, which is the best interest of children, which is a standard that runs throughout the entirety of all decisions that are made in that specialized court. There's a reason why there's a domestic relations exception. This order was put together and reaffirmed by several judges over several years, who had a bird's eye view of what was going on in front of them, and made a conscious determination that they needed to protect these children. And it would seem to be the quintessential subject area where this court should say, State Court, if we are going to look to you and defer to your specialization, this is the most appropriate instance of doing something like that that would be a unique function for the State Court. Let me ask you one question about the res judicata issue. Did you raise res judicata in the district court? I believe we did, Your Honor. You said you believe you did. Is that a yes? Yes, I believe it. Yes, I believe it. Again, there's been a lot of cases back and forth. In this particular instance, yes, Your Honor, I believe our district court chose to decide this case on Younger. Correct, Your Honor, it did not reach the res judicata issue. Thank you, Mr. McGuire. Thank you, Your Honor. We'll hear rebuttal from Mr. Clark. First of all, Judge Fischer, I would agree with counsel, they did raise, I think that was their primary argument, and the district court did not, basically didn't address it, effectively rejected it. I just wanted to... So a few points, if I can, if I have time. So first, I think counsel said that Allen v. DiBello, deny, wrote down, never weighed in on Younger. Again, I beg to disagree. So this court stated specifically, this is 861F3, 433, this is actually at note 20, quote, Younger abstention, which requires federal abstention in limited cases involving parallel state proceedings and the domestic relations exception. Do not borrow review in this case for the same reasons cited by the district court, C.A. 19-21, domestic relations exception, semicolon, 821-24, Younger abstention, unquote. That's a quote from this court. That's binding precedence, Your Honors, I would suggest. And again, they adopted the ruling of the judge in the district court, Judge Fred Wolfson, who rejected that, who said that, and again, we've cited this in our brief, and again, I've heard this before. I've looked at this on length, but it is addressed by this court. It's precedential, it's contrary to Silver, and this court has to follow the precedential decision in Allen. And again, frankly, that's res judicata. What were the reasons cited by the district court that was referenced in footnote 20, do you happen to know? By judge? Because footnote 20 doesn't have any independent reasoning, it just agrees with what the district court said on that point, but I'm not sure what the district court said. I wish I could completely address that. It's at length in our brief. I quoted Judge Wolfson. I think I have a couple pages of quotes from Judge Wolfson. Judge Fred Wolfson gave a long and detailed analysis. She says it's a narrow, again, I'll try and summarize, it's a narrow situation that Younger applies, and gag orders are not uniquely in furtherance of the judicial function. That has to be interpreted very narrowly, said Judge Fred Wolfson. And then obviously, Judge McNulty, in this very case, when they filed a motion to dismiss and erase this issue, Judge McNulty rejected it, again, referring to Judge Fred Wolfson's decision, again, in the 2014 gag order. So I don't know how you distinguish the two. And if Mr. Mallon has a decision on the merits as to Younger in the Allen v. DeVelo case, I don't know how you distinguish the two. But in the Allen case, and the parties are the same, which they are, because Judge, the current judge, is the follow-on and stands in the shoes of Judge Seville, and then Judge Katz, and so forth. So that actually is res judicata. But again, I'm almost out of time, so if I could try and get my other points very quickly, Your Honor. So again, the decision from 2020, they provided this on SA 227. But again, it doesn't address 2016. It says plaintiff seeks relief, I'm discussing his divorce or child custody proceedings in the media or online, or communicating with Del Barton High School, where his son currently attends school. It doesn't mention the 2015 gag order. Again, there were a whole bunch of gag orders at that point. And we discussed all of them. But we couldn't litigate the 2015 gag order. In that case, it was already in this case. That wouldn't be proper. And if dismissed on that ground, it certainly was not on the merits. So finally, again, in terms of Judge, the two judges, Judge Kessler, they said you did not initiate it. But again, we have the transcript. Judge Kessler explicitly said that he was imposing this gag order to protect DCPP information. In fact, it was the Seville gag order 2014 that was sought by the, and I see I'm out of time. Could I finish my point? So the Seville gag order in 2014, that's what the other party wanted. And they got. And then when Paul Nichols filed suit, and it went up to the federal court, and Judge Martini said they didn't follow proper procedures. And then it came back and Judge Kessler said, I need to follow what Judge Martini said. I'm going to vacate that gag order, mostly vacate that gag order. But then he said, I have a statutory obligation to protect DCP information. And again, this is in the appendix at 109, and you have the entire transcript. So, for instance, at appendix 94, it says, Judge Kessler, I agree it's the plaintiff's burden of proof, but I still have to be mindful that if I have a statutory obligation as a judge, I have to, you know, I've got to respect that statutory obligation. That's the gag order we're addressing today, Your Honors. The alleged statutory obligation. Now, I hear you, I've said, but wait a minute, what statutory obligation? That seems like it's pretty far-fetched. But you know what? The district, sorry, the Attorney General can issue a decision clarifying that statute and saying, in fact, the statute at issue does not require gag orders or permit gag orders. The Attorney General has full authority to address that problem by properly addressing the things of the statute. And then again, Mr. Clark, I'd like to ask you one question on the, that was raised in counsel's argument on Argonne's claim. If it survives younger extension, but what about the immunity question? Wasn't this gag order issued as part of his adjudicatory function? No, we can all, we can get declaratory judgment against a judge. 1983 says that you can't sue judges for injunctions unless there is a declaratory judgment. Of course, this circuit has held that declaratory judgment against judges can proceed. The judicial immunity does not prevent declaratory judgment. We're not asking for damages. We're asking for declaratory judgment, as Paul Argonne is asking for, in terms of the case against Judge Kessler and then whoever follows him. We want a declaratory judgment from this Court that the gag order was not issued under proper procedures initially, and then even you could get a judgment substantively that it doesn't follow federal law. It does not, it's not narrowly tailored. There was no sort of discussion, never has been. And again, this long decision by Judge Bottinelli, again, didn't discuss the First Amendment ever, didn't do any weighing of interest. He throws off, well, he's addressed First Amendment concerns. No, he hasn't. There's no discussion of the First Amendment. There's not even a discussion of burden of proof. Judge Bottinelli, when he finally addressed the motion, he said Mr. Mallon failed to present proofs to have the gag order rescinded. In other words, he put the burden of proof on Mr. Mallon, which is completely wrong, that's upside down, and didn't address any of the facts in the case. And so, again, it was never addressed at trial. It was never addressed at any plenary hearing. It was never addressed, even if those are relevant, which we don't think it is. Because we think what this Court needs to look at is what Judge Kessler said in 2015 when he repeated what Judge Kessler said six months later, explaining why he issued the gag order. But you can't have a gag order in effect for eight years and nothing happening, never have a plenary hearing, never have a real trial on the issues. At trial, say, well, it's not in front of the Court. Let me just follow up for a minute on Judge Wilson's reasoning, because you place reliance on it. It's got some good language in there for you. She said that these, she goes through the sprint factors. I'm looking at page 17 of your brief. She goes through the sprint factors, and then she essentially says, well, I'll quote it. The Family Court proceedings and orders at issue here are not analogous to contempt hearings, and therefore do not fall into the jurisdiction of the State's ability to perform judicial functions. So the syllogism there is, because it's not a contempt hearing, or analogous to a contempt hearing, it doesn't further the State's ability to follow judicial functions. Therefore, younger abstention does not apply. And then you, in your next line, you say, gag order is not analogous to a contempt proceeding. Let's agree with you on that. Let's say gag order is not analogous to a contempt proceeding. How does that carry the day for you when the verbiage from sprint is orders uniquely in furtherance of the State's ability to carry out its judicial functions, which presupposes that any order in furtherance, uniquely in furtherance, would satisfy younger abstention, not merely contempt orders? You understand my question? Well, sure. Contempt order is one subset of orders, or one type of order, uniquely in furtherance, but there could be others. And I don't see anything here to indicate whether the judge, the able trial judge, considered other orders that could be uniquely in furtherance of the State's judicial function. Well, you know, abstractly there could be others, but I think that the Supreme Court has really, and I think this is how Judge Wilson read it, the Supreme Court has said, criminal prosecution, civil enforcement action, or civil proceeding uniquely in furtherance of the State's ability to perform judicial function. Now, I think it was in Giudice v. Vail where they said that a contempt proceeding was uniquely in furtherance. So that's kind of the gold standard. But it doesn't mean there aren't others. That's my point, right? It logically doesn't mean there are others, Your Honor. I would agree with that. But in terms of the way the Supreme Court has addressed this, this is a narrow thing, and I don't think this Court should be carving others out there. Say, well, they don't know what other, but again, they'd have to prove it's uniquely in furtherance, and the burden would be on them. And they'd still have to have a plenary hearing and have all the facts developed why this is uniquely in furtherance. They seem to think any family court judge anywhere can issue any kind of gag order he or she wants, without a plenary hearing, without any notice, without anything, and then even, you know, Mr. Argent, people can't. That's not uniquely in furtherance. The word unique is unique. It means one. It's the only one. In fact, frankly, if you want to lead it literally, uniquely, well, if there's only one exception and it's unique, then that means it. You are telling this panel that if we were to carve out an exception, it would be up to the parties before the state court to make a record on the uniqueness? We could not do that. We could not make that legal determination. That determination is a matter of law for purposes of the Supreme Court. It's a matter of purposes of carving out an exception to this narrowness that we have under, now, under Younger and since Sprint. Right. Well, there's two ways to, two points I have to make on that. So, first of all, this Court in the Allen case already said. You're not answering my question. My question was really simpler than I phrased it, and that is, don't we have a sufficient record from which we can look at that appeals and determine the issue of uniqueness as a matter of law? Simple question is no, Your Honor. I don't think this Court does at this point. There's been no discovery in this case, even though they call it summary judgment, it was a motion to dismiss. There's been no factual development. There's been, I mean, again, a long procedural record here, which is available and has been available to this Court in various cases, including this one. Well, that's true, Your Honor, but again, it wasn't addressed by the District Court. So, I mean... But the bottom line is the Supreme Court has not told us whether gag orders are or are not uniquely in furtherance. And that's why this is a tough case, right? Well, again, I don't think it's a tough case, Your Honor, because I think Allen resolves the question. You follow Allen. Allen is clear. Follow footnote 20 in Allen that defaults to a District Court. Okay. Well, it says explicitly that younger abstention does not apply here for the reasons, same reasons have by District Court. But if you want to follow footnote, this thing about footnote three was that they want you to follow, that makes reference to gag orders, doesn't mention 2015 gag order. It just says gag orders. So, if you want to have the footnote fight, I'll take this Court's published presidential footnote over, you know, the District Court's... I don't want to have a footnote fight in any way like a food fight. If so, I don't want to go there. Well, I agree, Your Honor, but again, you know, the precedent is precedent. And the decision in terms of res judicata is res judicata. Did Allen v. DiBello involve a gag order? Yes, Your Honor. The 2014 gag order. Allen v. DiBello? Yes. It was actually, initially it was called Edelglass because it was two cases and they were combined on appeal. I'm just trying to find, I didn't see the word gag anywhere in the opinion that you cited, the Allen v. DiBello opinion. Well, again, Your Honor, that's... It was filed in 2017. That's the Freda Wilson case. The Edelglass, the Freda Wilson... But I'm asking, that case that you're relying on heavily, Allen v. DiBello, filed June 27, 2017, does that involve a gag order? Yes, because the Edelglass case, which was Malin's gag order from 2014, which we were just talking about with Freda Wilson, on appeal, it was the Allen case and the, and you can see this if you pull it up, the Allen case was consolidated with the Edelglass case and they were one consolidated case. So that's what they're talking about in footnote 20 of Allen. It's the 2014 gag order that Judge Seville imposed, which again, Mr. Malin prevailed on. And in terms of claim... I just think it's weird that you would say the opinion involves a gag order when it doesn't even mention the phrase gag order. That's just, that's kind of unprecedented, unprecedented that a case involves something that is unmentioned. Well, Judge Wilson, that's why we quoted Judge Wilson's decision at length, Judge Wilson mentions the gag order at length, and then this court says, for the reasons, again, younger abstention does not apply for the reasons cited by the district court. And so it explicitly addressed the, emphasized and embraced the reasoning Judge Wilson given. Judge Wilson explicitly goes on about the gag order at length. So it's true that the gag order is not explicit, but the younger abstention is. And if you go back and look at the district court decision, that's plainly what she was talking about. Okay. All right. All right. Thank you, Mr. Clark. Thank you, Mr. McGuire. The court will take this matter under advisement.